UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------X

CHRISTOPHER D'ARPA, JOSUE JOEL
PUJOLS-VASQUEZ, DESMOND MITCHELL,
EDGAR PADILLA, individually and on behalf of all
other persons similarly situated,

                       Plaintiffs,

                 -against-

RUNWAY TOWING CORP., RUNWAY
TOWING & RECOVERY CORP., CYNTHIA
PRITSINEVELOS; CHRIS PRITSINEVELOS,
JOHN DOES # 1-10; XYZ CORPORATIONS # 1-10,
jointly and severally,

                  Defendants.

--------------------------------------------------------------------------X

Docket No. 12-CV-1120
(JG)(RER)

District Judge GLEESON
Magistrate Judge REYES

## PLAINTIFFS MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR FINAL APPROVAL
## OF COLLECTIVE AND CLASS ACTION SETTLEMENT

Gary Rosen, Esq. (GR-8007)
1010 Northern Boulevard, Suite 322
Great Neck, New York 11021
516-437-3400
*Attorneys for Plaintiffs*
*and the Class*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... a

I.     INTRODUCTION.................................................................................. 1

II.    BACKGROUND.................................................................................... 1

  A.     The Lawsuit .................................................................................. 1

  B.     Discovery And Litigation ............................................................... 2

  C.     Settlement Terms.......................................................................... 7

  D.     Release Of Claims ....................................................................... 11

  E.     Factors Considered In The Settlement Of The Claims............................. 12

  F.     Class Members' Response To Settlement................................................ 14

III.   ARGUMENT ...................................................................................... 15

  A.     The Proposed Rule 23 Settlement Should Be Approved ......................... 15

        i. The Proposed Settlement Class Should Be Certified.......................... 16

        ii. The Proposed Settlement Is Fair, Reasonable, And Adequate And Should Be Approved ........................................................................ 16

     a.     Procedural Fairness........................................................... 16

     b.     Substantive Fairness ......................................................... 17

        1. The Complexity, Expense, And Likely Duration Of The Litigation *(Grinnell* Factor 1).................................................................. 18

        2.     The Reaction Of The Class To The Settlement *(Grinnell* Factor 2)............. 19

        3.     The Stage Of The Proceedings And The Amount Of Discovery Completed *(Grinnell* Factor 3) ............................................... 20

        4.     The Risks Of Establishing Liability *(Grinnell* Factor 4) ............................... 21

        5.     The Risks Of Establishing Damages *(Grinnell* Factor 5) ............................ 22

6.   The Risks Of Maintaining The Class Action Through The Trial...............22
     (*Grinnell* Factor 6)

7.   The Ability Of Defendants To Withstand A Greater Judgment.................23
     (*Grinnell* Factor 7)

8.   The Range Of Reasonableness Of The Settlement Fund In Light Of The Best
     Possible Recovery And The Attendant Risks Of Litigation............................23
     (*Grinnell* Factors 8 and 9)

     iii. The Notice To Class Members Meets The Requirements Of Rule 23......... 26

B. Service Fee Should Be Awarded To Plaintiff......................................... 26

C. The Claims Administration Fees Should Be Approved.............................. 28

D. Class Counsel's Attorneys' Fees And Costs Should Be Approved.................. 29

E. Class Counsel's Requested Fee Award Is Reasonable............................... 30

     a.   The *Goldberger* Factors..........................................................31

1.   Counsel's Time And Labor............................................................  31

2.   The Litigation's Magnitude And Complexity....................................  32

3.   The Risks Of Litigation..............................................................  33

4.   Quality Of The Representation.....................................................  33

5.   The Fee Is Reasonable In Relation To The Settlement ........................  34

6.   Public Policy Considerations.......................................................  34

IV.  CONCLUSION.............................................................................  35

# TABLE OF AUTHORITIES

**Statutes and Rules**

28 U.S.C. 202 ........................................................................................................ 34

Fed. R. Civ. P. 23 ................................................................................................. 16

N.Y. Lab. L. § 650 ............................................................................................... 34

**Cases**

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 462 (1974) ................................ 16

*Clark v. Ecolab, Inc.,* No. 07 Civ. 8625,
2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. May 11, 2010) ...................................... 30

*D 'Amato v. Watman,* 236 F.3d 78 (2d Cir. 2001) ................................................ 15

*Dorn v. Eddington Sec., Inc.,* No. 08 Civ. 10271,
2011 U.S. Dist. LEXIS 11931 (S.D.N.Y. Jan. 20, 2011) ...................................... 17

*D.S. v. N.Y. City Dep't of Educ.,* No. 05-Civ-4787,
2008 U.S. Dist. LEXIS 96034 (E.D.N.Y. Nov. 25, 2008) ...................... 22, 23, 24

*Duchene v. Michael Cetta, Inc.,* 2009 U.S. Dist. LEXIS 85955 (S.D.N.Y. Sept. 10, 2009)..... 30

*Frank v. Eastman Kodak Co.,* 228 F.R.D. 174 (W.D.N.Y. 2005) ................................. *passim*

*Gilliam v. Addicts Rehab. Ctr. Fund.,* No. 05-CV-3452,
2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008) ............................... 16, 34

*Glover v. Crestwood Lake Section I Holding Corp.,* No. 89-Civ-5386,
1991 U.S. Dist. LEXIS 4995 (S.D.N.Y. Apr. 10, 1991) ...................................... 22

*Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000)............................................ 31

*Hicks v. Morgan Stanley & Co.,* No. 01-Civ-10071,
2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 19, 2005) ............................... 17, 34

*In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164 (S.D.N.Y. 2000)...... 20

*In re Global Crossing Secs. & ERISA Litig.,* 225 F.R.D. 436 (S.D.N.Y. 2004).................... 33

*In re Greenwich Pharm. Sec. Litig.,* No. 92-Civ-3071,
1995 U.S. Dist. LEXIS 5717 (E.D. Pa. Apr. 27, 1995) ....................................... 34

iii

*In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465 (S.D.N.Y. 1998) .............. 29

*In re Painewebber Ltd. P 'ships Litig.,* 171 F.R.D. 104 (S.D.N.Y. 1997) ........................... 22

*In re Priceline.com, Inc. Secs. Litig.,* No. 00 Civ. 1884,
2007 U.S. Dist. LEXIS 52538 (D. Conn. July 20, 2007)....................................................... 34

*In re Sony SXRD Rear Projection Television Class Action Litig.,* No. 06-Civ-5173,
2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1, 2008) .......................................... 19, 20, 23

*In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570 (S.D.N.Y. 2008) .................... 16, 21, 29, 32

*Joel A. v. Giuliani,* 218 F.3d 132 (2d Cir. 2000) .................................................................. 25

*Khait v. Whirlpool Corp.,* No. 06 Civ. 6381,
2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) ....................................................... 30

*Maley v. Del Global Tech. Corp.,* 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..................... *passim*

*McAnaney v. Astoria Fin. Corp.,* No. 04 Civ. 1101,
2011 U.S. Dist. LEXIS 114768 (E.D.N.Y. Feb. 11, 2011) ................................................... 17

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,* No. 06 Civ. 4270,
2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009) ............................................. 28, 30

*Prasker v. Asia Five Eight LLC,No.* 08 Civ. 5811,
2010 U.S. Dist. LEXIS 1445 (S.D.N.Y. Jan. 6, 2010) ......................................................... 35

*Ramirez v. Lovin' Oven Catering Suffold, Inc.,* No. 11 Civ. 0520,
2011 U.S. Dist. LEXIS 138475 (S.D.N.Y. Oct. 27, 2011) .................................................. 26

*Ross v. A.H. Robbins, Inc.,* 700 F. Supp. 682 (S.D.N.Y. 1988) ........................................... 20

*Strougo v. Bassini,* 258 F. Supp. 2d 254 (S.D.N.Y. 2003) ...................................... 29

*Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261 (D.C. Cir. 1993) ............................... 30

*Taft v. Ackermans,* No. 02 Civ. 7951,
2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007) ......................................33, 34

*Teachers' Ret. Sys. v. A.C.L.N. Ltd.,* No. 01-Civ-11814,
2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004) ......................................... 25

*Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698,
2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 22, 2007) ..................................... 26

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96 (2d Cir. 2005) .................. *passim*

# I. INTRODUCTION

Plaintiffs submit this memorandum of law in support of their motion for final approval of a settlement in this wage and hour class / collective action brought on behalf of certain present and former employees of Defendants Runway Towing Corp., Cynthia Pritsinevelos and Chris Pritsinevelos (collectively, "Runway Towing" or "Defendants").[1] The settlement resolves all claims before this Court pursuant to the proposed compromise set forth in a Stipulation and Agreement of Settlement, Consent Judgment and Order of the Court dated September 11, 2013 ("Settlement Agreement").[1]

On September 17, 2013, the Court issued an Order granting preliminary approval of the Settlement Agreement.

# II. BACKGROUND

## A.    The Lawsuit

On March 7, 2012, Plaintiffs filed this action on their own behalf and on behalf of all similarly situated employees who were employed by Defendants for the period commencing on March 7, 2006. Plaintiffs brought claims for failure to pay overtime pursuant to the federal Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §201, *et. seq.*, failure to pay overtime pursuant to the New York Labor Law ("NYLL"), failure to pay spread of hours pay under the NYLL, unlawful deductions under the NYLL, breach of contract and unjust enrichment. Plaintiffs' FLSA claims were brought as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of all similarly situated employees who were employed by Defendants from March 7, 2009. Plaintiffs' NYLL claims were

---

[1] With this memorandum, Plaintiffs submit the November 26, 2013 declaration of Gary Rosen, Esq. ("Rosen Declaration"), attaching thereto as **Rosen Exhibit 1**, the Settlement Agreement in this action; as **Rosen Exhibit 2**, the September 17, 2013 Order granting preliminary approval; as **Rosen Exhibit 3**, a proposed Order; as **Rosen Exhibit 4**, the Class Notice mailed to Class Members; as **Rosen Exhibit 5**, the claim form mailed to Class Members; and as **Rosen Exhibit 6**, the single request for exclusion submitted by a Class Member in this action.

1

brought as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class of all Employees who were employed by Defendants from March 7, 2006. Nineteen (19) Employees have opted-in to this Action by being an initial Plaintiff or by filing a Consent to Become Party Plaintiff ("Opt-in Plaintiffs"). Four (4) additional former employees of Defendants joined in as Class Members.

**B.     Discovery And Litigation**

This action involved significant litigation over a period of approximately one and one half years and significant resources were expended on (a) discovering the individuals employed or formerly employed by Defendant Runway Towing Corp. who were not paid overtime wages and who were due monies for wage underpayments; (b) determining the number of hours that each such individual worked for Defendants; (c) determining the amounts of money paid by the Defendants to the said employees; (d) determining the amount of underpayment of wages by the failure of the Defendants to pay overtime pay for each hour that a Plaintiff and Class Member worked in excess of forty hours per week.

On April 4, 2012, Defendants filed an Answer to the complaint denying the allegations set forth in the complaints and asserting affirmative defenses, including a defense that under the Motor Carrier Act Exemption of the FLSA, the Defendants were not required to pay overtime pay to the Plaintiffs or Class Members. On April 8, 2012, Plaintiffs filed a First Amended Complaint.  On April 9, 2012, the Court issued a scheduling order. On April 19, 2012, the Defendants filed an Answer to the First Amended Complaint. On March 7, 2013, Plaintiffs filed a Second Amended Complaint.

On May 8, 2012, the parties appeared before Magistrate Judge Ramon E. Reyes ("Judge Reyes") for an initial conference where discovery was discussed. On May 9, 2012, Judge Reyes issued a scheduling order which provided for all discovery to be completed on or before November 8, 2012; for Plaintiffs to file a motion for conditional certification for a FLSA collective action by June 15, 2012 with Defendants to file opposition by June 30, 2012 and for Plaintiffs to file a reply by July 13, 2012.

On June 25, 2012, Class Counsel and Defendants' counsel filed a joint motion to certify the action as a conditional collective FLSA action. On June 26, 2012, Judge John Gleeson issued an order granting the joint motion certifying the action as a conditional collective FLSA action. On June 28, 2012, Class Counsel filed a proposed notice of publication of the conditional class action.

On July 6, 2012, the Court directed Defendants to file any opposition to the proposed notice of publication of the conditional class action by July 11, 2012. On July 13, 2012, Judge Reyes granted the motion to approve the proposed notice of publication of the conditional class action.

On August 9, 2012, Judge Reyes issued an Order directing all parties to appear on September 4, 2012 with regard to discovery disputes. On August 29, 2012, Opt-In Plaintiff Pastor Rivera filed a consent to become a party in the FLSA collective action.

On September 10, 2012, Opt-In Plaintiff Ricardo Sanabria filed a consent to become a party in the FLSA collective action. On September 10, 2012, Opt-In Plaintiff Manny Carpintero filed a consent to become a party in the FLSA collective action. On September 13, 2012, a conference was held before Judge Reyes and Defendants were ordered to respond in full to Plaintiffs' document demands by October 19, 2012. The

Court ordered that a status report be filed by November 7, 2012. On September 27, 2012, Opt-In Plaintiff Mariano Perez filed a consent to become a party in the FLSA collective action. On September 27, 2012, Opt-In Plaintiff Donnie Mack filed a consent to become a party in the FLSA collective action.

On October 1, 2012, Opt-In Plaintiff Jacqueline Shao filed a consent to become a party in the FLSA collective action. On October 1, 2012, Opt-In Plaintiff Jeffrey Kimbrough filed a consent to become a party in the FLSA collective action. On October 1, 2012, Opt-In Plaintiff Jose Rodriguez filed a consent to become a party in the FLSA collective action. On October 1, 2012, Opt-In Plaintiff Victor Fallas filed a consent to become a party in the FLSA collective action. On October 2, 2012, Opt-In Plaintiff Nedim Adam Mergen filed a consent to become a party in the FLSA collective action. On October 9, 2012, a pre-motion conference was held before Judge Reyes regarding claims of intimidation by Defendants and for continued discovery disputes. On October 9, 2012, Opt-In Plaintiff Jeremy Bennett filed a consent to become a party in the FLSA collective action. On October 15, 2012, Opt-In Plaintiff Anthony Alicia filed a consent to become a party in the FLSA collective action. On October 21, 2012, Plaintiffs filed a motion for a protective order to preclude communications between defendants and defendants' counsel with any plaintiffs, opt-in plaintiffs and potential plaintiffs and to preclude withdrawals by certain plaintiffs. On October 22, 2012, Opt-In Plaintiff Bryan Gonzalez filed a consent to become a party in the FLSA collective action. On October 25, 2012, a hearing was held before Judge Reyes regarding intimidation of parties.

On November 13, 2012, Opt-In Plaintiff Anatole Williams filed a consent to become a party in the FLSA collective action. On November 14, 2012, Opt-In Plaintiff

4

Vernon Dann filed a consent to become a party in the FLSA collective action. On November 16, 2012, Plaintiffs filed a motion for sanctions against Defendants for Defendants' failure to comply with discovery demands.   On November 29, 2012, Plaintiffs filed an Order to Show Cause for a Temporary Restraining Order and Preliminary Injunction to prevent Defendants Cynthia Pritsinevelos and Chris Pritsinevelos from selling their house.

On December 5, 2012, Judge Reyes issued an order granting in part and denying in part the Plaintiffs' motion for a protective order and order prohibiting any plaintiff or opt-in plaintiff from withdrawing from this action without approval after a fairness hearing or trial.   On December 10, 2012, the Court issued an order directing Defendants Cynthia Pritsinevelos and Chris Pritsinevelos to appear for depositions.   On December 10, 2012, the Court issued an Order granting Plaintiffs' motion for sanctions against defendants for failure to comply with discovery demands. On December 13, 2012, Judge Gleeson issued an Order "So-Ordering" the Joint Stipulation withdrawing the Order to Show Cause for a preliminary injunction and order of attachment.   On December 19, 2012, Defendants filed a motion for reconsideration of Judge Reyes' order of December 10, 2012 granting Plaintiffs' motion for sanctions against defendants for failure to comply with discovery demands.   On December 29, 2012, Judge Reyes denied Defendants' motion for reconsideration of the Order granting Plaintiffs' motion for sanctions against defendants for failure to comply with discovery demands.

On January 4, 2013, Plaintiffs filed a request for a pre-motion conference to file Plaintiffs' motion for summary judgment.   On January 17, 2013, a pre-motion conference was held before Judge Gleeson who referred the matter to Judge Reyes to determine

when the appropriate time would be for the Plaintiffs to file a motion for summary judgment. On January 22, 2013, Judge Reyes issued a scheduling order directing that Plaintiffs file for a Rule 23 class certification and for summary judgment by March 22, 2013, which scheduling order was thereafter amended. On January 24, 2013, Plaintiffs filed a letter motion for permission to file a Second Amended complaint.

On March 7, 2013, the Court granted Plaintiffs' motion to file a Second Amended complaint.

On April 14, 2013, Plaintiffs filed a comprehensive motion for summary judgment.

On May 17, 2013, Defendants filed a cross motion for summary judgment.

On June 12, 2013, oral argument was held on the Plaintiffs' motion for summary judgment and on the Defendants' cross-motion for summary judgment. On June 18, 2013, Judge Gleeson issued an order granting in part and denying in part Plaintiffs' Motion for Partial Summary Judgment and denying Defendants' Motion for Partial Summary Judgment. Judge Gleeson ordered the parties to appear for a status conference on June 27, 2013 at 10:30 AM to discuss damages and possible settlement.

On July 1, 2013, Defendants filed a motion for reconsideration of Judge Gleeson's June 18, 2013 Order. On August 7, 2013, a hearing was held before both Judge Gleeson and Judge Reyes, wherein Judge Gleeson denied the Defendants' motion for reconsideration and ordered the parties to discuss settlement with Judge Reyes. On August 7, 2013, after over three hours of discussions with Judge Reyes, a settlement in the amount of $350,000 was achieved.

The settlement amount agreed to by the parties is, of course, a compromise figure. It took into account the risks of proving the amount of monies owed to each plaintiff in light of the Defendants' claims that the Plaintiffs were exempt employees under the Motor Carrier Act Exemption of the FSLA and the right of the Defendants to appeal the decision of this Court granting partial summary judgment in favor of Plaintiffs. The time for Defendants to appeal was extended by the Defendants' filing of the Motion to Reargue. The settlement also took into consideration Defendants' substantiated representations that any greater settlement or judgment could put them out of business and could force them into bankruptcy. In light of the strengths and weaknesses of the case, including the risks in ultimately collecting a greater judgment, Plaintiffs and Class Counsel believe that the settlement easily falls within the range of reasonableness because it achieves a significant benefit for the Class where failure to prove the amount of actual damages at trial is possible.

### C.    Settlement Terms

The Settlement Agreement provides that Defendants shall pay a maximum of $350,000 on a claims made basis, with (a) the nineteen (19) Plaintiffs (and opt-in Plaintiffs) having filed declarations to this Court with the Plaintiffs' motion for summary judgment in April 2013 used herein to determine the settlement amounts due to each Plaintiff and Class Member and (b) the Class Members who filed claim forms after preliminary approval of the settlement.   The $350,000 settlement amount includes attorneys' fees, costs, disbursements, expenses, any service fee, and the fees of Class Counsel to administer the settlement over a twenty five (25) month period.   The settlement provides that the Defendants will make monthly payments for twenty five (25)

7

months to Class Counsel who will then in turn issue payment to the Plaintiffs and Class Members on a quarterly basis, with the first payment being distributed to the Plaintiffs and Class Members promptly upon final approval of this settlement, with the intent to distribute funds to the Plaintiffs and Class Members before Christmas 2013. The Plaintiffs and Class Members have waited years to receive the pay that they should have received from the Defendants long ago and many have expressed to Class Counsel that they wish to have funds for Christmas 2013. While it would have been preferred for the Plaintiffs to receive one check for the total settlement amount, Defendants represented that they were unable to financially afford a lump sum payment of $350,000 and therefore, the twenty five (25) month payment plan was negotiated with the assistance of Judge Reyes.

The Class is defined as all persons who worked as a tow truck driver, dispatcher, office personnel, yard man, mechanic or similar position between March 7, 2006 and November 1, 2013 who did not timely opt out of the NYLL claims in the settlement, and also includes all opt-in plaintiffs who did not opt out of the Class.

The settlement fund consists of three parts:

Part I consists of a total of $150,000 to be paid by Defendants which is the amount of money that will be paid to the up to nineteen (19) individuals who were either initial plaintiffs in this action or who filed a form to opt-in to this lawsuit prior to the date of this notice ("Opt-In Plaintiffs"). Based on the information provided by the Opt-In Plaintiffs to the Plaintiffs' attorneys, and when taken together with the records provided by the Defendants, the Settlement Agreement provides that Class Counsel will provide a schedule to the Court, which is annexed to the Rosen Declaration as Exhibit "7" detailing

8

the allocation of the $150,000 Part I amount that shall be paid to each of the Opt-In Plaintiffs. The information that was utilized to determine the allocation was the payroll time sheets and payroll records provided by the Defendants which demonstrated the number of hours that each person worked and the amount of overtime pay that each of the Plaintiffs and Class Members were not paid. This, taken together with the declarations filed by Plaintiffs in support of the motion for summary judgment, the Opt-In Plaintiffs' hourly rate of pay and the information that was provided by Defendants disputing the amount due to the Plaintiffs prior to the execution of the Settlement Agreement resulted in the preparation of Exhibit "7" to the Rosen Declaration allocating the payments to the Plaintiffs under Part I of the settlement. The Settlement Agreement provides that the Defendants would have no right to object to the methods of distribution of the $150,000 under Part I of the Agreement.

Part II of the settlement consists of a total sum of $75,000 which is the amount of money that will be paid to all of the individuals who submitted claim forms under NYLL claims as Class Members, other than the Opt-In Plaintiffs (the "Class Fund"). The Settlement Agreement provides that the Defendants shall issue payment of the sum of $75,000 to Gary Rosen Law Firm, as attorneys within ninety (90) days of the issuance of a decision and order from this Court approving the claims of any claimants seeking recovery under Part II. Annexed to the Rosen Declaration as Exhibit "8" is an allocation of the distribution of the $75,000 under Part II of the settlement. A total of seventy two (72) notices of the Class Action were mailed out by Class Counsel after the preliminary approval of the settlement and only one (1) individual opted out of the Class Action and four (4) individuals filed claim forms to recover their portion of the $75,000 Class Fund.

The total of the claims under Part II exceeded $75,000 and therefore, each claimant shall receive a proportionate share of the $75,000 Part II Class Fund. The Settlement Agreement provided that in order to obtain a portion of the Class Fund, claimants must file a claim. The Class Fund is applicable only to claims for violations of NYLL, by the Defendants failure to pay overtime pay for each hour that a claimant worked in excess of forty (40) hours per week. The Settlement Agreement provided that for a claim to be considered by Class Counsel and submitted to the Court for approval, claimants must have filed a claim form with sufficient evidence to indicate that the claim is valid by November 1, 2013.

Part III of the settlement is the payment of Attorneys' Fees of $125,000 to Gary Rosen Law Firm, P.C. as Class Counsel, which was negotiated and deeply discounted from the actual number of hours expended by Class Counsel at a below-lodestar rate (Rosen Decl. ¶16-19).

The Settlement Agreement provided for any Incentive Awards to Plaintiff Christopher D'Arpa and Plaintiff Desmond Mitchell (Settlement Agreement ¶82) and Notice and Administration Costs to be paid out of the total Settlement Amount.

The Settlement Agreement provided that the Part II settlement claims be a claims made settlement as to the $75,000 Class Fund. The Settlement Agreement provided that in the event that valid claims totaling less than $75,000 are filed by claimants under the Part II Class Fund, any remainder of the $75,000 would revert to Defendant Runway Towing Corp. (Settlement Agreement ¶75). The total validated claims under the Part II Class Fund exceeds $75,000, therefore there will be no reversion to the Defendants (Rosen Decl. ¶5(h)).

The Settlement Agreement provided that Defendants would have no responsibility for the plan of allocation of the settlement funds (Settlement Agreement §77).

The Settlement Agreement provided that the settlement fund would be allocated by Class Counsel in good faith and recommended to the Court for approval (Settlement Agreement ¶78 and ¶79).

The Settlement Agreement provided that Class Counsel could seek an Incentive Award of $7,500 to be paid to Christopher D'Arpa and $7,500 to Desmond Mitchell for all of the efforts that they made to represent the interests of all of the Plaintiffs and which without their assistance and guidance, the settlement amount of $350,000 would not have been achieved (Settlement Agreement ¶82). The Settlement Agreement provided that payment of Incentive Awards to Christopher D'Arpa and Desmond Mitchell would be made from the Part I Settlement Amount (Settlement Agreement ¶82). The Settlement Agreement also provided that the Defendants would not oppose the granting of Incentive Awards (Settlement Agreement ¶82).

### D.     Release Of Claims

In return for the above consideration, the Released Claims (as defined in the Settlement Agreement) against Defendants shall be fully, finally and forever released, relinquished and discharged with prejudice and on the merits, without costs to any party (other than as provided herein), upon entry of the Final Order and upon the payment of all funds required hereunder. The Settlement Agreement provided that subject to final approval by the Court of the Settlement, and upon payment of the Settlement Amount, Plaintiffs and the Class Members, other than those who Opt Out of the Class ("Releasing Class Members"), would irrevocably release Defendants from any and all liability and

11

waive all of their claims or rights against the Defendants arising from Defendants' conduct as alleged in the Complaint or as described in the Settlement Agreement (Settlement Agreement ¶94).

### E. Factors Considered In The Settlement Of The Claims

Plaintiffs and Class Counsel further recognized and acknowledged the expense and length of continued proceedings necessary to prosecute the action against Defendants through trial for damages and appeals. They have also considered the uncertain outcome and the risk of any litigation as well as the difficulties and delays inherent in any such litigation. Plaintiffs and Class Counsel were further mindful of the risks of collecting on any judgment against the Defendants and the likely delay in obtaining a final judgment and collecting it for the Class. Therefore, Plaintiffs believe that it is desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice as set forth herein. Based upon their evaluation, Plaintiffs and Class Counsel have determined that the Settlement set forth in this Stipulation is fair, reasonable and adequate, and in the best interests of Plaintiffs and the Class Members, and that it confers substantial benefits upon the Class Members.

Class Counsel has thoroughly analyzed Defendants' factual and legal defenses, examined documents and other information produced by Defendants, reviewed the defenses and documents with Plaintiff, and assessed the strength of Defendants' arguments. Class Counsel recognized that Defendants' claimed that they were exempt from paying overtime pursuant to the FLSA and New York Labor Law pursuant to the Motor Carrier Act, and although the Court ruled against the Defendants on those claims,

the Defendants' stated that they intended to appeal such decision to the United States Court of Appeals for the Second Circuit.

Additionally, in considering the possibility of settlement, Plaintiffs and Class Counsel accounted for the time, delay, and costs of trial and appeal, as well as Defendants' inability to pay a significantly larger sum than the Settlement Agreement provides for. To be sure, the guaranteed payment of a substantial amount of money to Class Members in light of Defendants' financial instability was an important factor in Plaintiffs' acceptance of the settlement. As a part of the settlement, Class Counsel was able to negotiate to receive security for the benefit of the Plaintiffs and Class Members as follows, which was an inducement to the Plaintiffs and Class Counsel to accept the settlement which provides for reasonable certainty as to the collection of the $350,000 settlement amount:

a.        The assets of Runway Towing Corp., including the tow trucks, are collateral and security to ensure that payments will be made by Defendants pursuant to the Settlement Agreement (Settlement Agreement ¶84);

b.        Defendants may not sell, transfer or encumber any vehicles owned by Defendant Runway Towing Corp. without the express written consent of the Plaintiffs' attorneys to ensure that vehicles are not sold and the money taken out of Runway Towing Corp. by the Defendants (Settlement Agreement ¶85).

c.        If Defendant Runway Towing Corp. wishes to sell a vehicle and purchase another vehicle to ensure that their business continues so that the Settlement Amount will be paid, then Class Counsel will agree to allow the sale of a vehicle (Settlement Agreement ¶86).

13

d.        The house owed by Defendants Cynthia Pritsinevelos and Chris Pritsinevelos located at 215-12 29th Avenue, Bayside, New York (the "House") is additional security for the Defendants' compliance with the Settlement Agreement and the payment of the Settlement Amount (Settlement Agreement ¶88).

e.        Prior to Defendants Cynthia Pritsinevelos and Chris Pritsinevelos closing on the sale of the House, Defendants Cynthia Pritsinevelos and Chris Pritsinevelos must obtain approval by Judge John Gleeson, which approval may be granted or denied (Settlement Agreement ¶89).

f.        In the event that Defendants Cynthia Pritsinevelos and Chris Pritsinevelos wish to sell the House and provided that Judge Gleeson grants the request, as part of this Agreement, $47,500 of the $95,000 payment that is due in the twenty fifth month (25th) of this Agreement must be paid to the Class Counsel's escrow account from the sale proceeds for the sale of the House to occur (Settlement Agreement ¶90).

Moreover, Judge Reyes met with the parties, both together and separately for over three hours and carefully considered the above factors, which were discussed at length by the parties, before reaching a settlement (Settlement Agreement ¶52).

**F.     Class Members' Response To Settlement**

Pursuant to the Court's September 17, 2013 Order, Class Counsel mailed and distributed the Settlement Notice to all potential Class Members (Rosen Decl. ¶ 5(d).) The time has expired for Class Members to opt out and/or object under the Agreement. Only one Class Member has opted out of the settlement, and no Class Members have objected to the settlement (Rosen Decl. ¶ 10).

In addition, all of the money available to Class Members under Part II of the

14

Settlement Agreement has been claimed (Exhibit "8" to Rosen Decl.). Specifically, nineteen (19) original and/or opt-in plaintiffs have filed claims pursuant to their declarations submitted to this Court in support of the Plaintiffs' motion for summary judgment for which a decision partially granting such motion for summary judgment was granted by the court on June 18, 2013, for the Part I settlement in the amount of $150,000 (Exhibit "7" to Rosen Decl.). Four (4) individuals whose claims total over $75,000, or over 100% of the $75,000 Part II of the Settlement Agreement Class Fund in the amount of $75,000, have timely submitted claim forms. Class Counsel estimates that *after subtractions* for any Court-approved administration fees, the Plaintiffs receiving the Part I settlement funds will receive $135,000 ($150,000 fund less $7,500 incentive service award to Plaintiff Christopher D'Arpa and $7,500 incentive service award to Plaintiff Desmond Mitchell), and the Class Members receiving the Part II settlement funds will receive approximately $67,500 of the $75,000 fund (the difference being administration fees for administering payments for the twenty five (25) months of collecting the funds and the quarterly distribution of the funds to the Plaintiffs and Class Members. (Rosen Decl. ¶ 10).

## III. ARGUMENT

### A.   The Proposed Rule 23 Settlement Should Be Approved

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any compromise of claims brought on a class basis: "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." *See also D'Amato v. Watman,* 236 F.3d 78, 85 (2d Cir. 2001). Approval of a class action settlement is within the Court's discretion, "which should be

exercised in light of the general judicial policy favoring settlement." *In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) (internal quotation omitted). "The Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 462 (1974).

### i.      The Proposed Settlement Class Should Be Certified

For the reasons set forth in the Court's June 18, 2013 Order, the settlement class satisfies the requirements of Fed. R. Civ. P. 23(a) & (b)(3) and should be finally certified. *See D'Arpa v. Runway Towing Corp.,* Docket No. 11-CV-1120, 2011 U.S. Dist. LEXIS 138475, at *4-6 (E.D.N.Y. June 18, 2013).

### ii.     The Proposed Settlement Is Fair, Reasonable, And Adequate, And Should Be Approved

In deciding whether to approve a settlement, courts consider the fairness of the settlement by looking at the negotiating process that led to the settlement and the substantive terms of the settlement in light of "the judicial policy favor[ing] the settlement of class actions." *Gilliam v. Addicts Rehab. Ctr. Fund.,* No. 05-CV-3452, 2008 U.S. Dist. LEXIS 23016, at *9 (S.D.N.Y. Mar. 24, 2008); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116 (2d Cir. 2005).

### a. Procedural Fairness

A presumption of fairness arises where a settlement was "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc.,* 396 F.3d at 116 (internal quotation omitted). Relevant factors include "[t]he experience of counsel, the vigor with which the case was prosecuted, and the

coercion or collusion that may have marred the negotiations themselves[.]" *Hicks v. Morgan Stanley & Co.,* No. 01-Civ-10071, 2005 U.S. Dist. LEXIS 24890, at *13 (S.D.N.Y. Oct. 19, 2005) (internal quotation omitted). Here, Class Counsel demonstrated competence and the ability to protect the Plaintiffs rights under the FLSA and NYLL. The litigation and negotiations were vigorously fought, and settlement was reached only after Class Counsel had a thorough understanding of the facts of the case, the granting of partial summary judgment in favor of the Plaintiffs pursuant to the decision of the Court dated June 18, 2013 and settlement conferences with the Court.

Moreover, where, as here, the settlement is the by-product of a settlement conference before a magistrate judge, there is a presumption of fairness and arm's-length negotiations. *E.g., Dorn v. Eddington Sec., Inc.,* No. 08 Civ. 10271, 2011 U.S. Dist. LEXIS 11931, at *2-3 (S.D.N.Y. Jan. 20, 2011) ("The assistance of an experienced class action employment mediator . . . reinforces that the Settlement Agreements are non-collusive."); *McAnaney v. Astoria Fin. Corp.,* No. 04 Civ. 1101, 2011 U.S. Dist. LEXIS 114768, at *17 (E.D.N.Y. Feb. 11, 2011). The parties in this action participated in two in-person settlement conferences, one with Judge Gleeson and one with Judge Reyes, after heavily litigating this action. The settlement is procedurally fair, and is entitled to a presumption of being fair, reasonable and adequate.

### b. Substantive Fairness

Courts in this Circuit review a proposed settlement agreement for substantive fairness according to the factors set forth in *City of Detroit v. Grinnell Corp.*: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. These factors ought not be applied in a formulaic manner. Rather, "[t]he evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice." *Grinnell Corp.*, 495 F.2d at 468 (citing *Saylor v. Lindsley,* 456 F.2d 896, 904 (2d Cir. 1972)). Here, all the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

### 1. The Complexity, Expense, And Likely Duration Of The Litigation (*Grinnell* Factor 1)

To assess the substantive fairness of a settlement, courts weigh the benefits of a potential settlement against the time and expense of continued litigation. *Maley v. Del Global Tech. Corp.,* 186 F. Supp. 2d 358, 361-62 (S.D.N.Y. 2002). "[Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 184-85 (W.D.N.Y. 2005) (internal quotation omitted). This case is no exception, as there are numerous Plaintiffs and Class Members, who were undeniably not paid for any hours that they worked more than forty hours in a week, they waited years to recover their unpaid wages and claims have been brought under both federal and state statutes.

Continued litigation would require a trial for damages on those claims on which the Court granted summary judgment in favor of the Plaintiffs and a trial on those portions of the Plaintiffs' claims on which the Court did not grant summary judgment.

The trial could be complicated as the analysis of each of the Plaintiffs' claims and hours worked, monies paid and disputes by the parties as to the hours worked and monies paid to each Plaintiff and Class Member would be tedious and time consuming for the Court, the Plaintiffs and the Defendants. A trial would be necessary, featuring extensive testimony by Defendants, Plaintiffs, and numerous Class Members, in addition to expert testimony as to damages and non-payment of overtime wages, liquidated damages and interest due under the NYLL to the Plaintiffs and Class Members. Any judgment would likely be appealed, thereby extending the duration of the litigation and depleting any possible recovery. This settlement, on the other hand, makes monetary relief available to Plaintiffs and Class Members in a prompt and efficient manner. Thus, the first *Grinnell* factor weighs in favor of final approval.

### 2. The Reaction Of The Class To The Settlement
### *(Grinnell* Factor 2)

In evaluating the degree of Class Members' support for a settlement, courts look to the proportion of the class that objects to and opts out of the settlement. Where relatively few Class Members opt-out or object to the settlement, the lack of opposition supports court approval of the settlement. *In re Sony SXRD Rear Projection Television Class Action Litig.,* No. 06-Civ-5173, 2008 U.S. Dist. LEXIS 36093, at *18 (S.D.N.Y. May 1, 2008).

Class Counsel mailed the Settlement Notice to all Class Members. (Rosen Decl. ¶ 5(d), 8.) No Class Member objected to the settlement, and only one Class Member opted out of the settlement. (Rosen Decl. ¶ 10.) All of the money available to Plaintiffs and Class Members has been claimed. There are a total of twenty three (23) Plaintiffs and Class Members who have filed claims. (Rosen Decl. ¶ 11.) Class Counsel estimates that

these twenty three (23) Plaintiffs and Class Members' will collectively receive, *after subtractions for any Court-approved attorneys' fees, costs, and service fees,* approximately $217,500. (Rosen Decl. ¶ 12.) Therefore, Class Members' satisfaction with the settlement is clear. This favorable reception by the Class constitutes "strong evidence" of the fairness of the proposed settlement and supports judicial approval. *See RIVED Int'l, Inc. v. Sloan's Supermarkets, Inc.,* No. 94 Civ. 5587, 2003 U.S. Dist. LEXIS 8239, at *4 (S.D.N.Y. May 15, 2003) ("The lack of class member objections… may itself be taken as evidencing the fairness of a settlement") (quoting *Ross v. A.H. Robbins, Inc.,* 700 F. Supp. 682, 684 (S.D.N.Y. 1988)).

### 3. The Stage Of The Proceedings And The Amount Of Discovery Completed *(Grinnell Factor 3)*

Courts look at whether "the parties conducted sufficient discovery to understand their claims and negotiate settlement terms." *In re Sony SXRD Rear Projection Television Class Action Litig.,* 2008 U.S. Dist. LEXIS 36093, at *20. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000). Here, the parties reached a settlement after extensive formal discovery. Defendants produced, and Class Counsel reviewed thousands of pages of documents, including virtually every weekly and/or daily timesheets, payroll records, and documents relating to the payments made to the Plaintiffs and Class Members as employees of Defendants. Approximately seven (7) depositions were held. These documents enabled Class Counsel to evaluate the strength of Plaintiffs' claims and reasonably estimate the total potential damages.

Class Counsel thus entered into the proposed Settlement Agreement with a thorough understanding of Plaintiffs' case. Such knowledge of the "strengths and weaknesses of their cases" supports a finding that the Settlement Agreement reached in this matter is the result of fair and reasonable negotiation. *See Frank,* 228 F.R.D. at 185 (holding that when counsel understands the "strengths and weaknesses of their cases" through extensive discovery, this knowledge supports final approval).

### 4.   The Risks of Establishing Liability *(Grinnell* Factor 4)

Liability has been established through the Plaintiffs' motion for summary judgment which was partially granted by the Court. However, the issue of determining the amounts of money that would be due to each and every Plaintiff would be a matter for trial, had the settlement not have been reached. The Plaintiffs would risk the amounts which they would each have to prove at trial for the Court to determine the amounts of money due to each Plaintiff. In evaluating the risks of establishing liability, a court must "assess the risks of litigation against the certainty of recovery offered by the Settlement." *In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d at 579. Courts recognize that regardless of the perceived strength of a plaintiffs' case, liability is "no sure thing[.]" *Wal-Mart Stores, Inc.,* 396 F.3d at 118 (internal quotation omitted). In this case, without a settlement, the amount of monies that would be due to each Plaintiff would be a question for trial.

There are disputed issues of fact concerning the amounts of money that would be due to each Plaintiff. Further, while each Plaintiff believes that his or her claim is meritorious and calculated, Class Counsel are experienced and realistic and understand that the amounts of money due to each Plaintiff for unpaid overtime would be a hotly contested issue which would be disputed by the Plaintiffs and the Defendants.

## 5. The Risks Of Establishing Damages *(Grinnell* Factor 5)

Courts also consider the risks of establishing damages. Regardless of plaintiffs' ability to establish liability, they still face "substantial risks in proving [their] damages at trial." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 128 (S.D.N.Y. 1997); *see also Wal-Mart Stores, Inc.,* 396 F.3d at 119. Although the damages in this case are primarily based on Defendants' own records, "damages are a matter for the jury, whose determinations can never be predicted with certainty." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. at 128; *Maley,* 186 F. Supp. 2d at 365 (recognizing that a jury may award plaintiffs only a fraction of their alleged damages).

## 6. The Risks Of Maintaining The Class Action Through The Trial *(Grinnell* Factor 6)

The next *Grinnell* factor is the risk of maintaining the class action through trial. Specifically, courts consider whether a class is already certified, whether plaintiffs will move for class certification, whether defendants will oppose certification, and whether the class could be decertified. *D.S. v. N.Y. City Dep't of Educ.,* No. 05-Civ-4787, 2008 U.S. Dist. LEXIS 96034, at *52 (E.D.N.Y. Nov. 25, 2008). Courts also consider the "pressure of active adversarial proceedings on named plaintiffs" and its potential effect on their ability to represent the class. *Glover v. Crestwood Lake Section I Holding Corp.,* No 89-Civ-5486, 1991 U.S. Dist. LEXIS 4995, at *18 (S.D.N.Y. Apr. 10, 1991). The Plaintiffs moved for class certification which the Court granted. The Defendants indicated that they would appeal the decision of the Court, which would ultimately have to be decided by the United States Court of Appeals for the Second Circuit, arguing that the Court erred in deciding to exclude certain evidence, to wit: the tow truck authorizations and logs which Defendants claimed demonstrate that Defendant Runway Towing Corp. was an interstate

22

motor carrier, exempt from the FLSA under the Motor Carrier Exemption. (Rosen Dec1. ¶13.) Thus, there is some risk that the Court of Appeals would reverse the District Court resulting in no recovery for the Plaintiffs and the Class Members.

### 7.  The Ability Of Defendants To Withstand A Greater Judgment (*Grinnell* Factor 7)

Next, courts consider a defendant's ability to withstand a judgment greater than the settlement. *D.S.,* 2008 U.S. Dist. LEXIS 96084, at *57. This factor weighs heavily in favor of approving the settlement. Defendants have demonstrated to Plaintiffs that they cannot withstand a significantly greater judgment than the amount they have agreed to pay. Indeed, a significantly greater judgment would most likely force Defendants to cease operations and file for bankruptcy. The proposed settlement amount is a realistic amount that Defendants can pay based on the Defendants' financial condition.  Defendants have shared with Plaintiffs documents substantiating their claim that a larger settlement or judgment would make them go out of business. (Rosen Decl. ¶ 14.)  Continued litigation would further deplete Defendants' resources, making it unlikely that Defendants could pay a settlement or judgment of this size in the future. Moreover, to Class Counsel's knowledge, this appears to be the largest settlement ever reached in litigation by tow truck drivers and other towing company employees against a towing company in the Second Circuit and possibly in the United States (Rosen Decl. ¶15).  Accordingly, this factor weighs heavily in favor of approving the settlement.

### 8.  The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 and 9)

The final two *Grinnell* factors can be considered together. *In re Sony SXRD Rear Projection Television Class Action Litig.,* 2008 U.S. Dist. LEXIS 36093, at *24. "The

most important factor in the court's assessment of the proposed settlement is the 'strength of the case for plaintiffs on the merits, balanced against the [relief] offered in settlement.'" *D.S.,* 2008 U.S. Dist. LEXIS 96034, at *53 (quoting *Grinnell,* 495 F.2d at 455). The determination of the 'best possible' recovery necessarily assumes Plaintiffs' success on both liability and damages covering the full class period alleged in the Complaint as well as the ability of Defendants to pay the judgment." *Maley,* 186 F. Supp. 2d at 365.

These factors weigh heavily in favor of approval of the Settlement. "The determination whether a settlement is reasonable does not involve the use of a mathematical equation yielding a particularized sum. Instead, there is a range of reasonableness with regard to a settlement — a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank,* 228 F.R.D. at 186 (internal quotations and citations omitted).

Defendants have agreed to pay 100% of the actual unpaid overtime wages of the initial Plaintiffs and Opt-In Plaintiffs, plus nearly the full liquidated damages under the FLSA and in the case of the Plaintiffs' claims under NYLL, the Defendants have agreed to pay 100% of the actual unpaid overtime wages of the initial Plaintiffs and Opt-In Plaintiffs, nearly all of the liquidated damages and interest at the statutory rate of interest.

The settlement provides that Class Members who filed a claim form are to receive over 97% of their unpaid overtime wages and liquidated damages under the FLSA and in the case of the Class Members who filed a claim form under NYLL, they

24

are to receive over 97% of the unpaid overtime wages plus liquidated damages and interest at the statutory rate of interest.

Based on Class Counsel's analysis of the potential damages, this settlement results in the Plaintiffs and Class Members receiving nearly all of the unpaid wages from the Defendants that they were entitled to receive, plus liquidated damages and interest. The settlement provides that Plaintiffs and Class Members will receive their unpaid overtime plus liquidated damages and interest ranging from a low of $20.97 to a high of $58,614.55. The settlement provides justice to the Plaintiffs and Class Members and should result in a lesson to the Defendants that they are required to abide by the FLSA and NYLL henceforth. In addition to the foregoing, the Defendants are paying the legal fees of Class Counsel, which legal fees have been voluntarily reduced by approximately fifty percent (50%) by Class Counsel from Class Counsel's reasonable billable rates in order to achieve this settlement.

Thus, while there is certainly a possibility that the Class may be awarded more money, including penalties and the like, after trial on damages, the settlement provides nearly a full recovery for the Plaintiffs and the Class Members rather than "speculative payment of a hypothetically larger amount years down the road." *Teachers' Ret. Sys. v. A.C.L.N. Ltd.,* No. 01-Civ-11814, 2004 U.S. Dist. LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004).

The *Grinnell* factors all weigh in favor of issuing final approval of the Settlement Agreement. Because the Settlement, on its face, is "fair, adequate, and reasonable, and not a product of collusion," *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000), the Court should grant final approval.

25

### iii. The Notice To Class Members Meets The Requirements Of Rule 23

As set forth in the Court's September 17, 2013 Order, the Class Notice satisfies the requirements of Rule 23(c)(2)(B)[2]. *Ramirez,* 2011 U.S. Dist. LEXIS 138475, at *6-.8.

### B.     A Service Fee Should Be Awarded To Plaintiffs Christopher D'Arpa and Desmond Mitchell

Under the proposed Settlement Agreement, and subject to the Court's approval, a $7,500 service fee is to be awarded to Plaintiff Christopher D'Arpa and a $7,500 service fee is to be awarded to Plaintiff Desmond Mitchell.

A court may grant service fees in a class action. Service fees "are particularly appropriate in the employment context. . . . [where] the plaintiff is often a former or current employee of the defendant, and thus . . . he has, for the benefit of the class as a whole, undertaken the risks of adverse actions by the employer or co-workers." *Frank,* 228 F.R.D. at 187; *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at *23 (S.D.N.Y. June 22, 2007).

Plaintiff Christopher D'Arpa and Plaintiff Desmond Mitchell have expended considerable amounts of time and effort to assist Class Counsel with the case. Plaintiff Christopher D'Arpa and Plaintiff Desmond Mitchell initiated the lawsuit, reviewed documents, explained the relevant and necessary factual information to Class Counsel, evaluated Defendants' defenses, and obtained additional opt-in Plaintiffs. Plaintiff Christopher D'Arpa and Plaintiff Desmond Mitchell also assisted Class Counsel with preparation for the settlement conferences and they both appeared in Court on numerous occasions for the benefit of all Plaintiffs and all Class Members. After the parties agreed

---

[2] Class Counsel mailed the Class Notice and claim form via first class mail to all Class Members (Rosen Decl. ¶5(d) & (e)). Only 5 Class Notices were returned as undeliverable. (Rosen Decl. ¶6.) Class Counsel made all reasonable efforts to obtain correct addresses for all returned Class Notices. (Rosen Decl. ¶7.)

to the settlement, Plaintiff Christopher D'Arpa and Plaintiff Desmond Mitchell worked to ensure that as many Class Members as possible filed claim forms. (Rosen Decl. ¶ 24.) Thus, the assistance by Plaintiff Christopher D'Arpa and Plaintiff Desmond Mitchell was crucial in the prosecution and proposed resolution of the case.

At their examinations before trial, Plaintiff Christopher D'Arpa and Plaintiff Desmond Mitchell testified that they were unable to find work as tow truck drivers after this action was commenced because they were "blacklisted" by the Defendants to the towing industry. Plaintiff Christopher D'Arpa and Plaintiff Desmond Mitchell lost much more than $7,500 in lost wages each as a result of allegedly being blacklisted by Defendants.

In the employment context, where workers are often blacklisted if they are considered "trouble makers," class representatives are particularly vulnerable to retaliation. *E.g., Silberblatt v. Morgan Stanley,* 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, less others be dissuaded."). Even where there is not a record of actual retaliation, service fees are appropriate in recognition of the risk of retaliation assumed by lead plaintiffs for the benefit of absent Class Members. *Frank,* 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that Kodak has or will take retaliatory action towards either Frank or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.").

The service fee of $7,500 for two Plaintiffs each is modest in comparison with

those approved by other courts, and it represents approximately 4.3% of the Settlement Fund. *See, e.g., Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,* No. 06 Civ. 4270, 2009 U.S. Dist. LEXIS 27899 at *18 (S.D.N.Y. Mar. 31, 2009) (approving aggregate incentive payment of $84,000 for fourteen plaintiffs in a wage and hour case under the FLSA). Because of their time, assistance, and development of the case, and subject to actual and potential retaliation, the payments to Plaintiff Christopher D'Arpa and Plaintiff Desmond Mitchell are appropriate and justified as part of the overall Settlement.

### C. The Claims Administration Fees Should Be Approved

The Settlement Agreement provides that Notice and Administration Costs including the costs of notifying the Class, and otherwise administering the settlement on behalf of the Class, the costs of the Notice and Administration Costs including the costs of notifying the Class, and otherwise administering the Settlement on behalf of the Class shall be deducted from the $75,000 Class Fund prior to making payments to the Class Fund members (¶98(a) of the Settlement Agreement).

The Class Counsel fees for Notice and Administration Costs over the twenty five (25) months of receiving monthly payments from Defendants and distributing the funds to the Plaintiffs on a quarterly basis are estimated to be approximately $7,500 with such figure being a guaranteed maximum cost for Notice and Administration Costs (Rosen Decl. ¶ 20, 21.). Accordingly, Plaintiffs respectfully requests that the Court approve all reasonable fees of the Claims Administrator in the sum of up to $7,500 to be deducted from the $75,000 Part II Class Fund.

## D. Class Counsel's Attorneys' Fees And Costs Should Be Approved

It is well established that "attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work." *In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d at 585 (internal quotation omitted). "Fees and expenses are paid from the common fund so that all Class Members contribute equally towards the costs associated with litigation pursued on their behalf." *Id.* The award of attorneys' fees has the three-fold benefit of: (1) "providing just compensation," (2) "encourag[ing] skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and (3) "discourag[ing] future misconduct of a similar nature." *Id.* In this case, the Settlement Agreement authorizes Class Counsel to receive a total of $125,000, as attorneys' fees, which was a figure well below the actual billable amounts based on the time expended on this action, with the assistance of and guidance of Judge Reyes in reaching the settlement. The total attorneys' fee is approximately 35% of the total settlement amount.

Although there are two ways to compensate attorneys for successful prosecution of class actions (the lodestar method or the percentage of the recovery method), courts generally prefer to award fees as a percentage of the common fund. *Strougo v. Bassini,* 258 F. Supp. 2d 254, 26162 (S.D.N.Y. 2003) (collecting cases); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (collecting cases). "The trend in [the Second] Circuit is toward the percentage method, . . . which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of the litigation." *Wal-Mart*

*Stores, Inc.,* 396 F.3d at 121 (internal quotation marks omitted). The percentage of the fund method is preferred because it rewards prompt and efficient resolution of class litigation, while strict application of the alternative lodestar method encourages inefficiency and resistance to prompt settlement. *See Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1268 (D.C. Cir. 1993).

### E. Class Counsel's Requested Fee Award Is Reasonable

The Settlement Agreement permits Class Counsel to receive $125,000, approximately 35% of the settlement amount as attorneys' fees, inclusive of costs and disbursements incurred by Class Counsel for all expenses up to the date of execution of the Settlement Agreement.  The percentage of the fund sought is consistent with the norms of class litigation in this Circuit. *See, e.g., Clark v. Ecolab Inc.,* No. 07 Civ. 8625, 2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. May 11, 2010) (awarding attorneys' fees of one-third of $6,000,000 settlement fund); *Khait v. Whirlpool Corp.,* No. 06 Civ. 6381, 2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) (awarding attorneys' fees of 33% of $9,250,000 settlement); *Duchene v. Michael Cetta, Inc. et al.,* 2009 U.S. Dist. LEXIS 85955, at *8 (S.D.N.Y. Sept. 10, 2009) (awarding class counsel attorneys' fees of 32.2% of $3,150,000 settlement fund);  *Mohney,* 2009 U.S. Dist. LEXIS 27899, at *13, 16-17 (awarding class counsel 33% of $3,265,000 settlement fund plus costs); *Maley,* 186 F. Supp. 2d at 370, 374 (awarding fees of 33.33% of the $11.5 million settlement fund and recognizing that courts in the Second Circuit have awarded fees as large as 50% of a settlement fund).

During the settlement conference with Judge Reyes, Class Counsel produced billing records demonstrating that Class Counsel expended time at the rate of $390 to

$425 per hour which total bills inclusive of costs exceeded $250,000.  In order to reach a settlement, it was agreed that the total legal fees would be $125,000.

### a. The *Goldberger* Factors

In determining whether a fee is reasonable, courts consider the six factors set forth by the Second Circuit in *Goldberger v. Integrated Resources, Inc.:* "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." 209 F.3d 43, 50 (2d Cir. 2000) (internal quotation omitted; alteration in original).

### 1. Counsel's Time and Labor

The first factor requires an examination of the time and labor expended by counsel in achieving the settlement. Here, Class Counsel spent significant time compelling the Defendants to produce discovery documents, reviewing the thousands of documents produced by Defendants in order to gain a full understanding of the case, preparation of a motion for summary judgment, in which the Court granted nearly all portions of the Plaintiffs' motion for summary judgment, attending Court for hearings and settlement conferences and finally negotiating a settlement agreement. Class Counsel analyzed Defendants' claims of financial hardship and made themselves available around the clock to Plaintiffs via cell phone, email and text messaging from the commencement of this action.

Class Counsel has spent substantial time organizing the administration of the settlement. Class Counsel updated Class Members' addresses, investigated Class Members' claims of that Defendants' records did not accurately reflect their hours

31

worked or wages paid or that certain individuals were not properly due any funds from the settlement and made appropriate corrections to the Class data.

As a result of Class Counsel's efforts, all of the money available to Class Members has been claimed by proper parties.

Due to Class Counsel's tenacity and expertise, they were able to achieve an excellent result for the Class with an extremely efficient use of resources. Had Class Counsel been less experienced with the Motor Carrier Act Exemptions to the FSLA and the towing industry in general, this case would likely have settled for a lower amount with potentially no recovery for the vast members of the Class. This action started out with four (4) individual Plaintiffs, and as a result of the continued efforts of Class Counsel, there are now twenty four (24) individuals, primarily tow truck drivers who worked for Defendants some sixty (60) to one hundred (100) hours per week, who will now receive the overtime pay that they never received while they were employed by Defendants. *See In re Telik, Inc. Secs. Litig.,* 576 F. Supp. 2d at 588-89 (stating that given class counsel's experience, they were "able to perform the various tasks necessary to advance Plaintiffs' and the Class's interest in a more efficient manner than would have counsel with a lesser degree of specialization in this field").

### 2. The Litigation's Magnitude And Complexity

There is an inherent complexity in pursuing any class action. In addition, the time period for examination of the failure of Defendants to pay overtime wages spanned a six (6) year time period, during which time Defendants maintained various types of payroll records and systems, each of which required separate analysis.

### 3. The Risks Of Litigation

"Courts of this Circuit have recognized the risk of litigation to be perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." *Taft v. Ackermans,* No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *30 (S.D.N.Y. Jan. 31, 2007) (internal quotation omitted); *see also In re Global Crossing Secs. & ERISA Litig.,* 225 F.R.D. 436, 467 (S.D.N.Y. 2004) (noting that "[t]he contingent nature of . . . Lead Counsel's representation is a key factor in determining a reasonable award of attorneys' fees"). Class Counsel took this case pursuant to a retainer agreement with the named Plaintiffs which stated that Counsel would receive a percentage of the recovery *only if* Plaintiffs obtained a recovery. Had Plaintiffs not obtained a recovery, Counsel would have received no payment for their work.

In the event that Defendants prevailed on their defenses, including the Motor Carrier Exemption of the FLSA, Class Counsel would have received no payment. Accordingly, Class Counsel took this case subject to substantial risks.

### 4. Quality Of The Representation

Class Counsel has extensive experience litigating in the District Court and experience representing workers as well as employers in wage-hour litigation and settlements. (Rosen Decl. ¶17.) As discussed, *supra,* Class Counsel has experience with the Motor Carrier Act Exemption and the towing industry's methods used to pay tow truck drivers and other employees which enabled Class Counsel to use their expertise and track record to obtain an excellent result for the Class through a comprehensive motion for summary judgment based on very detailed analysis and investigative work. *See In re*

33

*Priceline.com, Inc. Secs. Litig.,* No. 00 Civ. 1884, 2007 U.S. Dist. LEXIS 52538, at *15 (D. Conn. July 20, 2007) ("The quality of representation here is demonstrated, in part, by the result achieved for the class."). No Class Members objected to the attorneys' fees or any other part of the settlement, a "reaction . . . [which] is entitled to great weight by the Court." *Maley,* F. Supp. 2d at 374.

5.    **The Fee Is Reasonable In Relation To The Settlement**

In the Second Circuit, it is well settled that a fee equal to "one-third of the common fund after deduction of legal costs . . . is consistent with the norms of class litigation in this circuit." *Gilliam,* 2008 U.S. Dist. LEXIS 23016, at *15 (wage and hour settlement). Here, Class Counsel seek a fee of approximately 35% of the settlement fund which includes all of the costs, disbursements and expenses of this litigation. While this percentage could constitute a "windfall" in cases involving larger settlement funds, the $350,000 fund in this case "does not create such an issue." *Taft,* 2007 U.S. Dist. LEXIS 9144, at *32 ($15.175 million settlement fund); *see also In re Greenwich Pharm. Sec. Litig.,* No. 92-Civ.-3071, 1995 U.S. Dist. LEXIS 5717, at *19 (E.D. Pa. Apr. 27, 1995) ("[A] fee award of 33 percent [of $4.3 million settlement] does not present the danger of providing Class Counsel with the windfall that would accompany a 'megafund' of, for example, $100 million.").

**6. Public Policy Considerations**

The FLSA and NYLL are remedial statutes designed to protect employees from unfair labor practices. 29 U.S.C. § 202(a); N.Y. Lab. Law § 650. A fair attorneys' fee award that takes into account the services provided and the risks undertaken furthers these remedial purposes. *Maley,* 186 F. Supp. 2d at 374; *cf. Hicks,* 2005 U.S. Dist. LEXIS

34

24890, at *26. Moreover, in wage and hour litigation, "private attorneys general" play an important role. Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Prasker v. Asia Five Eight LLC,* No. 08 Civ. 5811, 2010 U.S. Dist. LEXIS 1445, at *17 (S.D.N.Y. Jan. 6, 2010) (internal citation omitted).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully asks that the Court (1) grant final approval of the collective action and class action settlement; (2) award Class Counsel attorneys' fees and costs; (3) award Class Counsel $7,500 administration fees in administering the settlement over the twenty five (25) months of the settlement payment and distribution period; and (4) approve the service fees requested to Plaintiff Christopher D'Arpa and Plaintiff Desmond Mitchell the amount of $7,500 each.


Dated: Great Neck, New York
November 26, 2013

Gary Rosen Law Firm, P.C.


Gary Rosen, Esq. (GR-8007)
1010 Northern Boulevard, Suite 322
Great Neck, New York 11021
(516) 437-3400
Attorneys for Plaintiffs and the Class

35